IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER DAWSON, R72570, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-cv-388-DWD |
| | ) |
| JEFFREY DENNISON, | ) |
| CHAD WALL, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Christopher Dawson, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Hill Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Pinckneyville Correctional Center (Pinckneyville). Plaintiff claims that the Defendants did not adequately manage the situation when he contracted coronavirus in March of 2021. Defendants filed a Motion for Summary Judgment (Doc. 27) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). After receiving an extension, Plaintiff filed a timely response. (Doc. 36). The evidence supports Defendants' contention that Plaintiff failed to exhaust his administrative remedies, so summary judgment will be granted, and Plaintiff's claim will be dismissed for failure to exhaust.

BACKGROUND

Plaintiff signed his complaint on January 1, 2022, though the Court did not receive it until March 1, 2022. (Doc. 1). Upon initial review, the Court allowed Plaintiff to proceed on a single claim against Defendants Dennison and Wall for deliberate indifference in their response to Plaintiff's requests for medical care. (Doc. 13 at 3). Specifically, the Court noted that Plaintiff alleged on March 21, 2021, he was not tested for coronavirus, and he alleged at or around that time he was sick and suffered a fever, hard coughing, and loss of taste. (Doc. 1 at 6). He alleges that he asked for medical care, but a nurse only gave him Tylenol. Plaintiff claims he wrote Defendant Dennison about his need for care, and he informed Defendant Wall, to no avail.

In the body text of his complaint, he alleges he submitted a grievance around April 15, 2021, that was not returned.[1] (Doc. 1 at 7). In support of the complaint, he submitted grievance documentation wherein he discussed a March 26, 2021, grievance that he alleged was not answered concerning coronavirus testing. (Doc. 1 at 11, 13).

The Defendants argue in their summary judgment motion that Plaintiff had three grievances that were potentially relevant, but none of those grievances were properly exhausted. (Doc. 28). Additionally, they argue that the relevant grievances do not identify either defendant nor do they describe their actions. In support of their motion, they submitted an internal grievance log from Pinckneyville, copies of the relevant

---

[1] There is no evidence that this grievance existed in the grievance records and logs submitted by the Defendants, and Plaintiff does not mention this grievance in his response to summary judgment.

grievances, a cumulative counseling summary, an IGRV log from the Administrative Review Board, and a declaration from an ARB employee.

In response to summary judgment, Plaintiff filed a two-page written brief with no supporting evidence. (Doc. 36). In his brief, he argues that he did all that he could to exhaust his remedies, but the facility failed to process his grievance attempts. He suggests that his grievance issues were intentional because the people who should process his grievances were the same people whom he grieved.

## FINDINGS OF FACT

Plaintiff submitted three grievances between March 26, 2021, and June 3, 2021, that concerned his alleged coronavirus issues. On March 26, 2021, Plaintiff filed an emergency grievance regarding "not being tested" for coronavirus. (Def. Statement of Undisputed Material Facts Doc. 28 at 2 ¶3; Grievance Log, Doc. 28-1 at 1). The facility deemed the issue a non-emergency and returned the grievance to Plaintiff for normal processing on March 29, 2021. (Grievance Log, Doc. 28-1 at 1). The grievance, assigned number 768-03-21, was never received for further review. (*Id.*).

On May 27, 2021, Plaintiff filed a grievance wherein he stated, "I file a grievance in March concerning my corona issue. That I was not tested and I believe I had been effected with the virus. I file an emergency grievance and no one as respond after the summary stage." (Doc. 1 at 13). The Counselor returned the grievance on May 27, 2021, with the note that "dates when incident occurred was not cited by offender that meet

DR504." (*Id.*). The grievance log does not indicate that Plaintiff appealed this outcome. (Doc. 28-1 at 1).

On June 3, 2021, Plaintiff filed a grievance wherein he indicated that he never received a response to grievance 768-03-21. The June 3, 2021, grievance was assigned number 1201-06-21. (Doc. 28-3 at 6). In the grievance plaintiff alleges,

> I file a grievance #768-03-21 concerning my health with me not being tested for corona. I file 3/26/21 I receive a summary 30 days after yet over 60 day period I haven't receive nothing. I was not test for over 14 days, or around 18 days. No one inform me of having corona nor was I quarantine.

(Doc. 28-3 at 6). As relief, Plaintiff asked to "know if he had corona" and why he was not taken care of. (*Id.*). In response, the Counselor indicated that grievance 768-03-21 was deemed a non-emergency and it was returned to Plaintiff, but it was never resubmitted. Plaintiff appealed to the grievance office, and the Grievance Officer concluded that he never returned grievance for 768-03-21 for processing in the normal channels, and his June 2021 grievance about the same was beyond the time frame per DR 504.810. (Doc. 28-3 at 5). The Chief Administrative Officer concurred. Plaintiff appealed to the ARB, which rejected the appeal because the underlying issue was "not submitted in the timeframe outlined in DR 504." (Doc. 28-3 at 4).

The internal grievance log from Pinckneyville reflects the same processing of the three grievances discussed above. (Doc. 23-1 at 1). The ARB IGRV log and the Declaration from Margaret Madole (a chairperson at the ARB), both indicate that the only grievance related to coronavirus received during the relevant time was the June 2021

grievance that was not filed in the time provided by DR 504.  (Doc. 28-3, IGRV Log; Doc. 28-4, Madole Declaration).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).  Courts generally cannot resolve factual disputes on a motion for summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted).  However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust.  *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).  After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust.  *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018).  The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal.  *See e.g., Walker v.*

*Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough

information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

An inmate may request that a grievance be handled on an emergency basis by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If the CAO determines the grievance "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergency, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c).

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

B. Analysis

Defendants argue that none of Plaintiff's grievances were properly and fully exhausted within the appropriate timeframe. Specifically, Plaintiff never resubmitted his

March 2021 emergency grievance for normal processing, and his two subsequent grievances about that issue were beyond the 60 days allowed by the grievance rules. (doc. 28 at 5-6). Alternatively, Defendants argue that the grievances are substantively insufficient because they do not name the defendants, nor do they describe their alleged acts of wrongdoing. (Doc. 28 at 6).

The Defendants have established that Plaintiff had access to the grievance process by the documentation of grievances that he filed, as well as by the counseling log which reflects cellhouse interactions between Plaintiff and counselors. Of note, the log reflects that the March 26, 2021, emergency grievance about coronavirus testing was received, and it was timely returned on March 29, 2021. (Doc. 23-2 at 4). The Defendants evidence also shows that Plaintiff had access to the grievance process, and that he had on other occasions submitted grievances at all levels of grievance review, and to the ARB. (*See e.g.,* Doc. 28-1 at 1 (Grievance log reflecting June 21, 2021, emergency medical grievance); Doc. 28-3 at 10-14 (September 10, 2020, grievance about staff misconduct).

The Defendants have also established that they did not receive a grievance related to the claims in this lawsuit that was fully exhausted at all levels of review. Plaintiff never returned his March 26, 2021, emergency grievance for normal grievance processing. His subsequent attempt to follow-up on this grievance in June of 2021 was too late and was untimely as it related to the underlying incident in March of 2021.

Even if the Court accepted that Plaintiff's March 26, 2021, emergency grievance was not properly returned to him, or accepted his June 2021 attempt to follow-up on it as full exhaustion, the contents of the grievances are insufficient related to the claims in this

lawsuit. Plaintiff's March 26, 2021, grievance related solely to coronavirus testing, but his claims in this lawsuit pertain to medical care sought from Defendants Dennison and Wall for alleged symptoms of coronavirus. His follow-up grievance did not mention Wall or Dennison by name, and it did not mention their responsiveness to his need for medical attention. Instead, he simply restated that his March 26 grievance concerned access to coronavirus testing. As such, the grievances in question were insufficient to notify the institution of the claim identified in this lawsuit—a claim for deliberate indifference to Plaintiff's medical symptoms.

In response to summary judgment, Plaintiff did not offer any evidence to refute the Defendants' showing that he failed to exhaust administrative remedies. He argues that the facility should have tested him for coronavirus, but testing is not the focus of the claim the Court defined in this lawsuit. He also argues, "the fact shows that [Plaintiff] ma[d]e multiple attempts through the grievance process to inform the administration of corona situation marking the dates of the situation, and the administration intentionally ignored grievance." (Doc. 36 at 2). He adds that he believes in 90% of lawsuits, IDOC argues failure to exhaust, but they are responsible for the grievance process and are the perpetrators of the acts complained about, which prevents individuals from exhausting their claims.

Plaintiff's contentions are unsupported, and they are unpersuasive. Plaintiff argues that the facility ignored his grievance attempts, but the evidence Defendants' proffered counters this contention. Specifically, the evidence demonstrates that his

grievances were processed and returned, not ignored. To the extent that Plaintiff implies wrongdoing on behalf of IDOC defendants, this theory is unsupported by any evidence.

Based on the totality of the record evidence, the Court finds that Defendants met their burden to establish that Plaintiff failed to exhaust his administrative remedies, and Plaintiff did not refute this showing. Accordingly, Plaintiff's claim in this lawsuit must be dismissed for failure to exhaust administrative remedies, and this case must be dismissed without prejudice.

## DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion filed by Defendants Dennison and Wall is (Doc. 27) is **GRANTED**. Plaintiff's claim against the Defendants is **DISMISSED** without prejudice for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Defendants and to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: August 7, 2023

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge